J-S09015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY REED | : | |
| | : | |
| Appellant | : | No. 6 EDA 2020 |

Appeal from the Judgment of Sentence Entered July 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000809-2018

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 25, 2021**

Appellant, Danny Reed, appeals from the judgment of sentence entered on July 24, 2019,[1] following his jury trial convictions for robbery, aggravated assault, persons not to possess a firearm, carrying a firearm without a license, carrying a firearm in public on the streets of Philadelphia, and possessing an instrument of crime (PIC).[2]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On January 11, 2018, police arrested Appellant in connection with a gunpoint robbery at the corner of 15th Street and Girard Avenue in Philadelphia, Pennsylvania wherein the victim was shot in the leg.  Police

_____

[1]  As made final by the denial, by operation of law, of Appellant's post-trial motions on November 28, 2019.

[2] 18 Pa.C.S.A. §§ 3701(A)(1), 2702(A), 6105(A)(1), 6106(A)(1), 6108, and 907(A), respectively.

interviewed the victim at the hospital shortly after the shooting. The victim described the shooter as an African American male in his late 40s, wearing dark clothing, riding a bicycle, and carrying a revolver. The victim also stated that his assailant smelled strongly of alcohol and was missing bottom teeth. The victim told the police that the perpetrator demanded money at gunpoint and put his hand into the victim's pocket. The victim's cellular telephone, and its protective case which also served as a wallet, fell out of his pocket onto the ground. A struggle ensued. The victim kicked the assailant in the groin and then picked up the assailant's bicycle to shield himself. The attacker shot the victim in the leg, retrieved the victim's cellular telephone, and rode away on his bicycle.

The victim's wife, who was at the hospital at the time of the police interview, provided police with information to track the victim's cellular telephone *via* an application called "Find My Phone." Police tracked the victim's cellular telephone to a location on Girard Avenue. There they saw Appellant laughing while holding a cellular telephone and noticed that Appellant was missing his bottom teeth. No one else was in the immediate area. When Appellant saw the police, he gave them a suspicious look, reached towards his waistband, and quickly walked away. The police ordered Appellant to stop, but he fled. Police chased Appellant. A struggle ensued wherein an officer and Appellant tumbled down a flight of stairs. Appellant pulled a firearm from his waistband, but the police disarmed him. Appellant was apprehended. The police recovered the firearm (which was loaded),

additional ammunition, and the victim's cellular telephone and wallet case containing the victim's credit cards. The police transported Appellant to the hospital wherein the victim identified Appellant. The victim asked the police to view Appellant a second time to confirm that he was missing teeth. The victim identified Appellant as the perpetrator again.

Prior to trial, Appellant filed a motion to suppress the victim's identification of Appellant, as well as the physical evidence recovered. He claimed that the victim's identification at the hospital was unduly suggestive. More specifically, Appellant claimed that the victim had already been informed by the police that his cellular telephone had been recovered from Appellant prior to the identification. Appellant also argued that the police lacked reasonable suspicion to detain him. Accordingly, Appellant argued that the victim's identification of Appellant, and the physical evidence recovered subsequent to arrest, required suppression. The trial court held a suppression hearing and ultimately denied relief.

On February 14, 2019, a jury trial commenced. On February 19, 2019, the jury found Appellant guilty of the aforementioned crimes.[3] On July 9, 2019, the trial court sentenced Appellant to an aggregate term of 17 to 34 years of imprisonment followed by five years of probation. On July 10, 2019,

---

[3] In a bifurcated, stipulated bench trial immediately following the jury verdict, the trial court separately found Appellant guilty of persons not to possess a firearm pursuant to Section 6105(A)(1).

Appellant filed a post-sentence motion which was denied by operation of law on November 28, 2019.[4]  This timely appeal resulted.[5]

On appeal, Appellant presents the following issues for our review:

A. Did not the [trial] court err in denying the motion to suppress the out-of-court identification and subsequent in-court identification of Appellant where the out-of-court identification was unduly suggestive, as police informed the complainant that his personal items had been recovered *before* he identified Appellant, and where there was insufficient evidence to show an independent basis for the in-court identification?

B. Did not the [trial] court err in denying the motion to suppress the physical evidence where police did not have reasonable suspicion to seize Appellant hours after the incident simply because he met a general description and he was in the area of where police tracked the complainant's stolen [cellular telephone]?

C. Did not the [trial] court err as a matter of law and abuse its discretion in imposing a sentence of confinement totaling 17 to 34 years followed by 5 years [of] probation that was manifestly excessive and unreasonable?

Appellant's Brief at 4 (emphasis in original).

_____

[4]  Following a hearing on July 24, 2019, the trial court determined that Appellant's sentence for carrying a firearm without a license was illegal. Accordingly, the court vacated that sentence and resentenced him within the statutory guidelines for that offense.  Appellant's sentence for unlicensed possession of a firearm was ordered to run concurrently with Appellant's sentence for robbery and did not change Appellant's overall, aggregate sentence disposition.

[5]  Appellant filed a notice of appeal on December 12, 2019.  On January 30, 2020, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely on January 20, 2020.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 30, 2020.

Appellant's first two issues challenge the trial court's rulings on suppression. We adhere to the following standards:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

In his first issue presented, Appellant claims the trial court erred by denying suppression of the victim's identification of Appellant. Appellant claims the police told the victim that they detained a suspect and recovered his cellular telephone before the victim identified Appellant at the hospital. Thus, Appellant claims the identification was unduly suggestive because "in essence, the [victim] was told that [Appellant] was the perpetrator." Appellant's Brief at 30. Appellant further contends that there was no independent basis for the victim's identification:

[Because the victim's hospital identification was unduly suggestive, and the street encounter was relatively brief], the [victim's] undoubted focus on the firearm pointed at his chest as evidenced by his attempt to block it, his identification more than three hours after the incident, the presence of a cross-racial identification, and the undoubted stress that accompanies being robbed at gunpoint and shot, the Commonwealth has failed to meet its burden of proving that the identification was untainted.

*Id.*

We have previously decided:

A court must assess the reliability of an out-of-court identification by examining the totality of the circumstances. A pre-trial identification will not be suppressed as violative of due process unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The reliability of an out-of-court identification is determined by considering the totality of the circumstances, including, *inter alia*, the following specific factors: (1) the witness' ability to observe the criminal act; (2) the accuracy of [a] photo array selection and other descriptions; (3) the lapse of time between the act and any line-up; and (4) any failure to identify the defendant on prior occasions. The purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted.

Additionally, even if an out-of-court identification is suggestive, an in-court identification is admissible if there exists an independent basis for the identification. An independent basis is established when the in-court identification resulted from the criminal act and not the suggestive identification procedure. To determine if an identification resulted from the criminal act and, therefore, has an independent basis, the trial court must consider the following factors:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the

confrontation, and the length of time between the crime and the confrontation.

***Commonwealth v. Russell***, 209 A.3d 419, 430–431 (Pa. Super. 2019) (internal citations, quotations, and brackets omitted), *appeal denied*, 218 A.3d 862 (Pa. 2019).

Here, the trial court determined that the victim had ample opportunity to view Appellant during the commission of the crimes and provided police with a detailed description prior to the identification at the hospital. More specifically, the trial court found that the area was well-lit, Appellant's face was not covered, and Appellant was in close proximity to the victim. ***See*** Trial Court Opinion, 7/30/2020, at 19. Moreover, there is no dispute that before identifying Appellant at the hospital, the victim described his assailant to police as a "black male, late forties, medium build, wearing a dark overcoat and a hoodie, riding a bicycle and the person smelled of alcohol and was missing bottom teeth."[6] Appellant's Brief at 26. The trial court also determined that the hospital identification was not unduly suggestive, that the victim independently identified Appellant upon viewing him at the hospital, and, thereafter, asked the police to view Appellant a second time to be certain. Trial Court Opinion, 7/30/2020, at 7.

---

[6] Appellant asserts that the victim "could not recall when he told police about the smell of alcohol and missing teeth. It may have been when police first questioned him at the hospital or sometime later." Appellant's Brief at 26. The arresting officer, however, confirmed that Appellant smelled of alcohol at the time of his arrest. ***See*** Trial Court Opinion, 7/30/2020, at 7.

Upon review of the record and applicable law, we agree with the trial court's assessment that suppression was unfounded. The victim was able to provide the police with a description of Appellant shortly after viewing him during the commission of the crimes. The victim was able to provide specific, detailed identifying factors, most notably, that his assailant smelled of alcohol and was missing bottom teeth, both of which are race-neutral features. Appellant matched that description and the victim twice confirmed it. Furthermore, the trial court noted that video surveillance of the scene also confirmed the victim's version of events. *Id.* at 19. Hence, the witness was able to observe the criminal act, provide an accurate description of Appellant close in time between the criminal act and viewing Appellant, and did not fail to identify Appellant on prior occasions. Based upon the totality of circumstances, we cannot conclude that even if the police suggested to the victim that his cellular telephone had been recovered from Appellant prior to the identification, that such information was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. From our review, the victim's independent identification of Appellant resulted from the criminal acts and was not the product of a tainted police identification procedure. Accordingly, suppression was unwarranted and Appellant's first issue lacks merit.

Next, Appellant argues the trial court erred by denying suppression because the police lacked reasonable suspicion to detain him. He claims that

he was not engaged in criminal activity, was not riding a bicycle as reported by the victim and was merely talking on a cellular telephone when he was seized by police. Appellant's Brief at 36-37. Appellant asserts that he was not the only person on the street at the time of the arrest, the cellular telephone application police used for tracking was not completely accurate, and there was evidence that Appellant was walking in a different direction than the tracking application indicated. *Id.* at 37.

This Court has recognized:

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of [the Fourth Amendment of the United States Constitution and] Article 1, Section 8 of the Pennsylvania Constitution.

To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.

The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity.

> In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience.  Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Luczki*, 212 A.3d 530, 544-545 (Pa. Super. 2019)

(internal citations, quotations, brackets, and ellipses omitted).

Moreover, we have determined:

> Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.  When evaluating whether reasonable suspicion existed in a particular case, this Court must view the circumstances through the eyes of a trained officer, not an ordinary citizen.  Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability.

*Commonwealth v. Milburn*, 191 A.3d 891, 898 (Pa. Super. 2018).

Further, in *Milburn*, we concluded that reasonable suspicion may be established by using a cellular telephone tracking application:

> Officer James's conclusion that the individuals in the van that he observed in the parking lot of the A–Plus Mini Market may have been involved in criminal activity was reasonable because: (1) he had experience with the reliability of the "Find My iPhone" app; (2) he arrived quickly at the location identified by the "ping;" (3) no other vehicles or individuals were present at the location; (4) the driver of the vehicle was operating it in a manner consistent with nervousness; and (5) he knew that the "pinged" location was a high crime area.

> The totality of the circumstances, of which the "Find My iPhone ping" was but one factor, establish that [the police] had specific and articulable reasonable facts that led them to conclude that the individuals in the van were engaged in criminal activity. Thus,

- 10 -

reasonable suspicion existed for them to conduct an investigatory detention[.]

*Id.* at 899.

In this case, the trial court found "the detectives had sufficient reasonable suspicion to stop [Appellant] based upon the description of the assailant, the victim's iPhone pinging in the "Find my Phone" app matching [Appellant's] exact location, and [Appellant's] suspicious movements."[7] Trial Court Opinion, 7/30/2020, at 23. Here, the police had a detailed description of Appellant, had reliable information tracking the stolen cellular telephone to Appellant's precise location, and Appellant engaged in suspicious activity and fled upon police arrival. Based upon our standard of review and the applicable law as set forth above, we discern the trial court did not abuse its decision by determining the police had reasonable suspicion to conduct an investigatory detention of Appellant. For all of these reasons, we conclude that the record does not support suppression.

Finally, Appellant argues that the trial court abused its discretion by imposing an excessive sentence:

[Appellant] is nearing 60 years old. The trial court gave him a sentence for a single criminal episode that will all but guarantee that he will never leave prison. Notwithstanding the seriousness of the charges for which he was convicted, robbery and aggravated assault, this sentence is manifestly excessive. This sentence is disproportionate and unreasonable where he was

_____

[7] More specifically, regarding suspicious behavior, the police testified that when they "pulled up next to [Appellant], [Appellant] gave [them] "side eye," reached towards his waistband, and began moving away." Trial Court Opinion, 7/30/2020, at 23.

given consecutive sentences for the same behavior. The [trial] court proposed that the sentence was imposed with compassion but a sentence that assures a defendant that he has little to no chance of a life without bars, is anything but. To add insult to injury, the lower court imposed a consecutive 5 years of probation after [Appellant] has served what will no doubt be 34 years.

Decades from now, [Appellant] will still be in prison. This Court cannot presume that he may be paroled at 17 years, or 25 years or 30 years. This Court should remand for a new sentencing hearing.

Appellant's Brief at 37-38 (citations omitted). He further argues he was "diagnosed with Post Traumatic Stress Disorder, alcoholism, and displayed the effects of bipolar disorder. His turbulent childhood and the systemic violence that surrounded his life warranted a sentence that takes his life into account as well as addressing the impact [on the victim]. *Id.* at 41.

This Court has stated:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, *see* Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, *see* 42 Pa.C.S.[A.] § 9781(b).

When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Further, a substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1)

- 12 -

inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Pacheco***, 227 A.3d 358, 374–375 (Pa. Super 2020) (internal case citations, quotations and brackets omitted), *appeal granted in part*, 237 A.3d 396 (Pa. 2020).

In the instant case, Appellant filed a timely notice of appeal, preserved his claims in a timely post-sentence motion, and included in his appellate brief a Rule 2119(f) statement. As such, he complied with the first three requirements as set forth above. Now, we examine whether Appellant presents a substantial question for our review.

Regarding the imposition of consecutive sentences, this Court has stated:

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.
>
> [An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Pacheco***, 227 A.3d at 376 (citation omitted). Here, we find Appellant's claim raises a substantial question.

We adhere to the following:

- 13 -

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

"Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement." [*Commonwealth v.*] *Moury*, 992 A.2d [162,] 171 [(Pa. Super. 2010)](citation omitted).

*Commonwealth v. Davis*, 241 A.3d 1160, 1177 (Pa. Super. 2020).

Our Supreme Court has "observed that this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.A. § 9781(c) and (d)." *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (citation omitted). In pertinent part, Section 9781(c) states that "[t]he appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds [] the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. §9781(c)(2). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." 42 Pa.C.S.A. § 9781(c).

We have recognized:

the term "unreasonable," while not defined in the Sentencing Code, generally means a decision that is either irrational or not

- 14 -

guided by sound judgment. [Our Supreme] Court [has stated] that the context of the term's use in Section 9781 indicates that the legislature "intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition."

[The] Supreme Court held that a sentence can be deemed unreasonable after review of the four elements contained in Section 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S.A. § 9721(b).

*Macias*, 968 A.2d at 777 (internal citations omitted). "[W]hen the proper standard of review is utilized, rejection of a sentencing court's imposition of sentence on unreasonableness grounds should occur infrequently, whether the sentence is above or below the guidelines ranges." *Id.* (internal citations and quotations omitted).

Regarding Sections 9781(d) and 9721(b), we have determined:

In reviewing the sentence, an appellate court shall have regard for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the guidelines promulgated by the commission. *See* 42 Pa.C.S.A. § 9781(d)(1)–(4).

Further, 42 Pa.C.S.A. § 9721(b), pertaining to sentencing generally, relevantly provides:

**(b) General standards.—**[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant....In every case in which the court imposes a sentence for a felony or misdemeanor...the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b) (bold in original).

Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question[.]" *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010). "Rather, the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender." *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006) (citation omitted).

*Davis*, 241 A.3d at 1178.

Initially, we note there is no dispute that the trial court imposed consecutive sentences in the standard guideline range and, therefore, clearly contemplated the sentencing guidelines. Next, the trial court "reviewed [a] mental health evaluation, the presentence investigation report, [Appellant's] sentencing memo[random] and listened to [Appellant's] argument at sentencing regarding the mitigating factors pertinent to [Appellant's] case, including [his] history of substance abuse, bipolar disorder, post-traumatic stress disorder, and age" before imposing the sentence. Trial Court Opinion, 7/30/2020, at 29. The trial court also "heard argument from both counsel; listened to the victim impact statements; reviewed [Appellant's] criminal history; and listened to [Appellant's] brief allocution." *Id.* at 29-30.

The trial court ultimately concluded that "[a]fter considering all of the information about the crime committed, the tremendous negative impact on the victim, and [Appellant's] own personal background, criminal history and rehabilitative needs, [] a standard range [aggregate] sentence of 17 to 34 years [of] incarceration plus 5 years reporting probation was appropriate."

*Id.* at 30.  The trial court specifically considered the gravity of the offense, the protection of the public, and Appellant's rehabilitation needs, noting that: 1) Appellant was on parole for a similar 1996 armed robbery at the time of the crimes herein; 2) the instant crimes constituted an escalation of violence because Appellant shot the victim, whereas the prior robbery did not result in injury; 3) the victim sustained permanent injuries affecting his income and the incident left his entire family traumatized; and, 4) Appellant displayed little remorse and denied committing the crimes at issue during sentencing.  *Id.* at 26-30.  The trial court also specifically considered Appellant's age, opining that Appellant had squandered prior chances at rehabilitation, there was no indication Appellant planned to stop robbing people even though he was 57 years old, and public safety was still at risk.  *Id.* at 28.

In this case, we discern no abuse of discretion in sentencing Appellant. The trial court detailed the nature and circumstances of the offenses, the history and characteristics of Appellant, and the findings upon which the sentence was based.  It had the benefit of a presentence investigation report,[8] the opportunity to observe Appellant, and considered the sentencing guidelines.  The trial court also specifically examined each of the Section

---

[8] "Where the court is in possession of a presentence report (PSI), we presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."  *Commonwealth v. Wallace*, 244 A.3d 1261, 1279 (Pa. Super. 2021) (citation and internal quotations omitted).

9721(b) factors including the gravity of the offense, the impact on the victim, and Appellant's rehabilitative needs. Upon our review, the record reflects the trial court's reasons for imposing sentence and shows its meaningful consideration of the facts of the crime and Appellant's character. For the foregoing reasons, we conclude Appellant's sentence was not unreasonable and the trial court did not abuse its discretion in sentencing Appellant. Accordingly, Appellant's final issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2021